U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 1 1 2026
CLERK, U.S. DISTRICT COURT
By ________
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

PENNY WHITNEY,
Plaintiff,
v.
AMAZON.COM SERVICES LLC,
Defendant.

Civil Action No. ____________

3-26CV3107-E

**COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

Plaintiff Penny Whitney, proceeding pro se, files this Complaint against Defendant Amazon.com Services LLC and, in support, states as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including Title I and Title V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 et seq. and 12203.

2. Venue is proper in the Northern District of Texas, Dallas Division, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred at Defendant's FTW5 facility in Dallas County, Texas.

## II. PARTIES

3. Plaintiff Penny Whitney is an individual residing in Mabank, Texas. At all relevant times, Plaintiff was an employee of Defendant within the meaning of the ADA.

4. Defendant Amazon.com Services LLC ("Amazon") is an employer within the meaning of the ADA and operated the FTW5 facility in Dallas County, Texas, where many of the events described below occurred. Defendant may be served through its registered agent.

## III. ADMINISTRATIVE PREREQUISITES

5. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 450-2026-01807.

6. On June 15, 2026, the EEOC issued a Dismissal and Notice of Rights granting Plaintiff the right to sue.

7. Plaintiff files this action within the applicable ninety-day period following receipt of the EEOC notice.

## IV. FACTUAL ALLEGATIONS

8. Plaintiff began working for Amazon on October 26, 2023, at the FTW5 facility and remained employed by Amazon during the relevant period.

9. Beginning in 2024, coworker Ashley and Operations Manager Emma repeatedly made derogatory comments concerning Plaintiff's visible neck scars, including calling Plaintiff "gross," "eww," "stinky," and "yuck." Other coworkers later participated in similar comments, creating an ongoing pattern of humiliating conduct directed toward Plaintiff.

10. Throughout 2024 and into 2025, Ashley also repeatedly made hostile gestures toward Plaintiff, including displaying her middle finger toward Plaintiff in the presence of security personnel, in the break room, and on the pack floor.

11. Over time, coworkers who had previously interacted with Plaintiff in a friendly or neutral manner began participating in derogatory comments, hostile gestures, and exclusionary conduct. Plaintiff experienced significant emotional distress, isolation, and mental anguish.

12. During 2024, multiple site managers, including Operations Manager Emma and Plaintiff's then-manager Hailey, repeatedly confronted Plaintiff during public stand-up meetings in front of other employees about an unauthorized picking designation that appeared on

Plaintiff's profile. Plaintiff repeatedly explained that she had no picking experience and had only been trained in pack.

13. On October 26, 2024, a significant harassment incident occurred involving Plaintiff and Ashley. Plaintiff later included this incident in her human-rights complaint.

14. On April 11, 2025, Plaintiff submitted a formal complaint to Amazon Human Resources concerning the continuing harassment and identified Ashley as the primary aggressor.

15. On the same date, Plaintiff reported the ongoing harassment to her manager, Rylie Fischbeck, while Human Resources personnel were present. Fischbeck entered the report details into the computer system and advised Plaintiff to file a complaint with Human Resources.

16. Plaintiff thereafter submitted an HR complaint identifying Ashley, Stacie, Bobby, Joann, and Jesse as individuals involved in the harassment. Plaintiff was not provided a ticket number or meaningful acknowledgment of the complaint and did not receive a substantive resolution that stopped the conduct.

17. On April 23, 2025, Plaintiff contacted Amazon's Ethics hotline regarding the workplace concerns. The call disconnected, and Plaintiff did not receive a follow-up response.

18. From June 1 through June 17, 2025, Plaintiff was placed on approved medical leave because she was unable to work as a result of workplace harassment and bullying. Amazon was aware of Plaintiff's medical leave and the workplace circumstances contributing to her inability to work.

19. On July 19, 2025, Plaintiff emailed HR requesting an update concerning her April 11 complaint but received no substantive response.

20. On July 20, 2025, Plaintiff again contacted HR requesting an update and again received no substantive response.

21. On July 23, 2025, during a MyHR telephone interaction, the representative stated that they could not hear Plaintiff, although Plaintiff's telephone was functioning normally.

22. On July 23, 2025, Plaintiff submitted a written MyHR complaint reporting a hostile work environment. Amazon closed the complaint the same day without, to Plaintiff's knowledge, conducting an investigation that addressed the reported conduct.

23. On September 13, 2025, Plaintiff attended a medical clinic visit concerning workplace-related distress and reported continuing harassment concerning alleged body odor. The evaluating medical provider documented that Plaintiff did not smell.

24. On September 15, 2025, Amazon opened an internal Human Rights investigation concerning Plaintiff's workplace complaint.

25. On September 17, 2025, Amazon Human Rights informed Plaintiff that her report had been forwarded to an internal investigation team. Plaintiff was not contacted by an investigator to provide a statement or submit evidence.

26. On September 23, 2025, Plaintiff met with Operations Manager Gerardo Ramirez to discuss the ongoing site harassment after completing formal AmCare Harassment Paperwork. Plaintiff contends that the discriminatory comments concerning her neck scars were not adequately addressed. Ramirez told Plaintiff that she could be terminated if her report were determined to be "dishonest." Plaintiff understood the statement as intimidating and retaliatory.

27. During the September 23, 2025 conversation, Plaintiff also reported harassing behavior by Tyer, who worked in Ship Dock. Plaintiff did not receive a corrective response that resolved the conduct.

28. On September 26, 2025, Plaintiff requested HR and investigation contact information and copies of her April 11 complaint. Amazon did not provide the requested information.

29. On September 27, 2025, Plaintiff reported worsening harassment and retaliation. Plaintiff did not receive an effective corrective response.

30. In late September 2025, Ramirez stated that he would investigate Plaintiff's concerns. Plaintiff did not receive the results of a meaningful investigation addressing the reported harassment.

31. On October 4, 2025, Plaintiff returned from approved medical leave. On the same date, Amazon issued Plaintiff a productivity write-up, which Plaintiff contends was retaliatory in light of her prior complaints and protected activity.

32. Following Plaintiff's return from medical leave, the hostile conduct continued and worsened. Additional coworkers who had previously been neutral or friendly began participating in derogatory comments, exclusionary conduct, or other hostile behavior. Management did not adequately respond to Plaintiff's complaints.

33. On December 10, 2025, Amazon reopened Plaintiff's July 23 complaint but again closed the matter without resolving the underlying harassment reported by Plaintiff.

34. On December 30, 2025, Plaintiff submitted a formal Evidence Preservation Notice requesting preservation of surveillance footage, internal communications, complaint records, medical documentation, and employment records relating to her complaints and employment. Plaintiff did not receive confirmation that a legal hold had been issued.

35. On January 2, 2026, at approximately 3:30 p.m., following the second-shift break, Ashley physically lunged and advanced toward Plaintiff as if she intended to strike her. Plaintiff turned her head and ignored the advance, after which Ashley walked away screaming "Yuck." Plaintiff immediately reported the incident and requested that Amazon review

available security footage. Plaintiff received no confirmation that the footage was reviewed.

36. On January 4, 2026, Plaintiff contacted the FTW5 Human Resources Manager to escalate the ongoing safety issues and lack of building intervention.

37. On January 5, 2026, Plaintiff suffered a severe workplace injury to her right arm/shoulder, resulting in Workers' Compensation Claim No. AMZ2666261 and medical leave.

38. From January 12 through January 23, 2026, Plaintiff contacted HR concerning medical care and workplace injury concerns. HR informed Plaintiff that it lacked visibility into portions of her claim.

39. On January 14, 2026, at approximately 1:00 p.m., Plaintiff verbally reported to an on-site Human Resources employee that the harassment was severely increasing. Plaintiff reported that employees had targeted her with "eww" and "yuck" comments that day. The HR employee stated that she would relay the report but, according to Plaintiff, did not open an official ticket or document the incident.

40. On February 3, 2026, Plaintiff returned to the facility to present return-to-work medical documentation following her shoulder injury. A member of Amazon's Safety team told Plaintiff that she should "quit because of her mental health" and stated that she was "only running on cortisone at this point." Plaintiff objected and stated that she was not quitting and was demanding a safe, harassment-free workplace. Plaintiff also contends that negative UPT deductions accumulated during protected injury leave.

41. On February 4, 2026, Plaintiff was placed on an approved Transitional Work Program status under assignment code JOB: TLD IB PALLET TRANSPORT MODIFICATIONS.

42. On February 6, 2026, while at her workstation, an employee working directly across from Plaintiff pushed a box into Plaintiff's eye while stocking boxes, resulting in a workplace eye injury. Plaintiff immediately sought medical care at the facility's AmCare clinic.

43. While Plaintiff was receiving care for the February 6 eye injury, she overheard an unidentified female Safety representative mocking her physical appearance and hygiene to other staff members in an adjacent room, with an employee identified as Seth present at the time the comments were made. Plaintiff understood these remarks as part of the continuing hostile treatment.

44. Before leaving the facility following the February 6 incident, Plaintiff reported to AmCare that she was experiencing severe medical anxiety and believed the workplace presented an immediate safety threat. Plaintiff states that AmCare staff did not scan her employee badge or provide a written receipt or record of the visit.

45. On February 7, 2026, Plaintiff was cleared to return to full duty following treatment for her shoulder injury, effective February 8, 2026. Plaintiff contends that administrative problems involving third-party claims administrators interfered with her records and leave.

46. On February 10, 2026, Anchor Risk Management closed Plaintiff's injury file without prior written notice, according to Plaintiff's records. Plaintiff contends that the closure affected evaluation of ongoing treatment and lost-time compensation.

47. On February 11, 2026, Plaintiff received a generic email confirmation from Amazon's Central Investigations Intake Team stating that an Employee Relations Investigator would contact her personally.

48. On February 15, 2026, Plaintiff sent a follow-up written escalation to Central Investigations stating that she was experiencing severe and pervasive retaliation and organized "mobbing."

49. On February 19, 2026, Plaintiff escalated an unresolved injury-leave payment issue concerning January 8 through February 7 and stated that she would add the issue to her pending EEOC complaint. Plaintiff requested that communications regarding her employment status and leave remain in writing.

50. On February 19, 2026, an Amazon Escalations Investigator, Ana, informed Plaintiff by email that corporate was partnering with local HR to address site concerns while she reviewed DLS and Workers' Compensation issues.

51. On February 20, 2026, an Amazon Employee Relations Investigator, Emilie, contacted Plaintiff regarding official Amazon Case 20260211-1808397 and requested a verbal interview.

52. Between February 16 and February 22, 2026, Plaintiff discovered what she believed were unauthorized modifications to her internal Learning/Permissions Profile within Amazon's KNET/Learning Management System. Her profile reflected picking certifications and experience that Plaintiff states she never received or performed.

53. On February 22, 2026, Area Manager Zackery T. approached Plaintiff on the floor and displayed the profile, asking why a picking designation appeared. Plaintiff explained that she had not been trained in picking and raised her concern that the designation had been improperly added.

54. On February 28, 2026, Plaintiff submitted a written Statement of Facts to Investigator Emilie under Case 20260211-1808397 describing the safety threats, workplace mobbing, and

alleged changes to her training records. Investigator Emilie responded that her system reflected that there was nothing attached and requested resubmission.

55. In late February 2026, Plaintiff escalated her complaints to Amazon executive leadership and the Office of the CEO, placing corporate personnel on notice of the workplace safety concerns, Workers' Compensation Claim No. AMZ2666261, and the hostile conduct Plaintiff associated with her anxiety disorder. Plaintiff requested paid administrative leave for physical and psychological safety and did not receive the protective response she requested.

56. On March 20, 2026, an Amazon Executive Escalations investigator, Patti, contacted Plaintiff by email and acknowledged the report.

57. On March 23, 2026, Investigator Patti requested that Plaintiff define the specific training records at issue, explain how she discovered the changes, identify who had system access, and provide documentation concerning the adjustments. Plaintiff requested that Amazon conduct an internal system audit to determine who accessed or modified the records.

58. On March 3, 2026, Plaintiff separately requested an explanation from Anchor concerning why her claim processing had stalled. Anchor responded that it would not honor lost-time coverage, according to Plaintiff's records.

59. On March 4, 2026, Amazon corporate escalations provided a written update confirming that corporate had partnered with DLS to review Plaintiff's leave requests and acknowledged that 67 hours and 15 minutes of UPT had been wrongfully taken from Plaintiff's account after a leave-cancellation error. Corporate restored those hours but, according to Plaintiff, did not resolve the remaining safety and claim-coverage concerns.

60. On March 28, 2026, Plaintiff sent a written escalation to Investigator Patti demanding an automated system audit concerning the alleged harassment and changes to her records. Patti acknowledged the message, but Plaintiff did not receive audit data or a further protective intervention.

61. Following further review, Investigator Ana sent a final executive escalation response stating that Amazon did not find a violation of policy or evidence of mishandling of Plaintiff's concerns and that her Workers' Compensation claim was not denied. Plaintiff disputes that characterization based on the closure of her claim file.

62. Following the corporate response, Plaintiff contends that Amazon did not separate her from the individuals she had identified as harassers or otherwise provide an effective workplace intervention.

63. Plaintiff's treating psychiatrist ultimately determined that the facility was not psychologically safe for Plaintiff to return to.

64. Plaintiff was placed on an extended medical leave of absence beginning in February 2026. Plaintiff contends that Amazon approved or maintained leave through October 2026, and the leave remained ongoing as of the filing of this Complaint.

65. Plaintiff contends that Amazon's repeated failure to stop disability-related harassment after receiving numerous reports, medical information, and escalations caused her substantial emotional distress and interfered with her ability to work.

66. On June 25, 2026, Plaintiff submitted a formal request for reasonable accommodation to Amazon Disability and Leave Services ("DLS"), requesting a transfer to a different work location, avoidance of high-conflict work environments, and intermittent leave, based on documented medical limitations arising from the workplace conduct described above.

67. Following Plaintiff's June 25, 2026 request, Amazon's accommodations team contacted Plaintiff regarding the documentation submitted, including a Behavioral Health Physician Statement and a Request for Information (RFI) form, and advised that the documentation was incomplete because it did not specify Plaintiff's work-related restrictions beyond a requested department transfer. Amazon further sought clarification of whether Plaintiff's provider was releasing her to modified duty immediately or only as of a subsequent scheduled office visit, and set a documentation deadline of July 10, 2026.

68. On July 3, 2026, Amazon acknowledged Plaintiff's accommodation request and confirmed that it had notice of Plaintiff's medical limitations.

69. On July 7, 2026, Plaintiff requested intermittent leave extending into 2027.

70. On July 12, 2026, Amazon Disability and Leave Services responded to Plaintiff's intermittent leave request, determining that Plaintiff was not eligible for leave under the Family and Medical Leave Act ("FMLA") because she had worked approximately 484.88 hours in the preceding twelve months, below the 1,250-hour threshold required for FMLA eligibility. Amazon's determination stated that this did not mean Plaintiff's leave request was denied outright, but warned that failure to timely provide supporting medical documentation could result in denial of the request and could subject Plaintiff to discipline, up to and including termination, under Amazon's attendance policies.

71. On July 20, 2026, and again from July 22 through July 27, 2026, Plaintiff attended medical evaluations documenting that she remained medically unable to return to work at Amazon due to workplace harassment, mobbing, and retaliation.

72. On July 30, 2026, Amazon approved Plaintiff's continuous medical leave from February 27, 2026 through October 27, 2026. Plaintiff contends that, notwithstanding this approval, Amazon did not provide an effective accommodation permitting her to return to work.

73. In a subsequent communication, Amazon stated that Plaintiff's leave from February 27, 2026 was approved only through August 26, 2026 — a date inconsistent with the October 27, 2026 date referenced in Amazon's July 30, 2026 communication. Plaintiff disputes which date accurately reflects her approved leave period and reserves the right to clarify this discrepancy based on her complete case record. In the same communication, Amazon stated that Plaintiff's accommodation claim, No. A-2026-1630899, had been closed with a status of "Inadequate Documentation," and that Plaintiff was required to elect between extending her leave beyond August 26, 2026 or returning to work without an accommodation for her limitations by signing an attestation to that effect.

74. In connection with the same communication, Amazon stated that, based on a leave period beginning February 27, 2026, Plaintiff had worked approximately 1,020.55 hours in the preceding twelve months and remained ineligible for FMLA leave. Amazon thereby provided conflicting calculations of the number of hours Plaintiff had worked within the twelve-month lookback period used to determine FMLA eligibility — one determination stating approximately 1,020.55 hours, and another stating approximately 484.88 hours. Plaintiff contends that a difference of more than 535 hours cannot be explained by ordinary recalculation and indicates inconsistent or inaccurate timekeeping within Amazon's human resources systems. Plaintiff relied on Amazon to maintain accurate records of her hours worked, and the conflicting FMLA calculations demonstrate that Amazon did not consistently track or report Plaintiff's hours worked.

75. Throughout August 2026, Plaintiff remained on medical leave, continued receiving medical treatment, and pursued long-term disability benefits.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Disability-Based Hostile Work Environment / Disability Discrimination
### (Violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.)

76. Plaintiff incorporates paragraphs 1 through 75 as if fully set forth herein.

77. Plaintiff has a diagnosed anxiety disorder and contends that Amazon had actual knowledge of her impairment and associated medical limitations. Plaintiff also contends that she was subjected to derogatory and hostile treatment concerning visible neck scars and that Amazon personnel and coworkers perceived or treated her as having an impairment.

78. Plaintiff was subjected to unwelcome, repeated, and serious harassment, including derogatory comments concerning her appearance and perceived condition, hostile gestures, exclusionary conduct, threats, and conduct by Safety personnel concerning her mental health and appearance.

79. Amazon had actual or constructive knowledge of the harassment through repeated HR complaints, manager reports, medical leave, central investigations, executive escalations, and other reports, yet Plaintiff contends that Amazon failed to take prompt and effective remedial action.

80. The alleged harassment was sufficiently severe or pervasive, viewed in context, to affect the conditions of Plaintiff's employment and contribute to a hostile working environment.

81. As a result, Plaintiff suffered emotional distress, mental anguish, isolation, and interference with her ability to work.

### SECOND CLAIM FOR RELIEF

**Unlawful Retaliation**
**(Violation of Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203(a))**

82. Plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

83. Plaintiff engaged in protected activity by reporting disability-related harassment, communicating medical and accommodation-related concerns, objecting to conduct concerning her mental health and appearance, and escalating her concerns through Amazon's internal complaint and investigation channels and to the EEOC.

84. Following protected activity, Plaintiff contends that Amazon subjected her to materially adverse actions and retaliatory treatment, including a productivity write-up after medical leave, incorrect UPT deductions, adverse handling of leave and injury-related matters, statements that she should quit because of her mental health, and continued failure to protect her from the reported harassment.

85. The timing, circumstances, repeated complaints, and Amazon's knowledge support an inference of a causal connection between Plaintiff's protected activity and the alleged retaliatory conduct.

86. The alleged actions would reasonably tend to deter an employee from making or continuing protected complaints.

**THIRD CLAIM FOR RELIEF**
**Unlawful Coercion, Intimidation, Threats, and Interference**
**(Violation of Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203(b))**

87. Plaintiff incorporates paragraphs 1 through 86 as if fully set forth herein.

88. Plaintiff contends that Defendant, through its agents or employees, interfered with or intimidated Plaintiff in the exercise of rights protected by the ADA by threatening termination in connection with her harassment report, telling Plaintiff that she should quit

because of her mental health, and failing to take effective protective measures after receiving reports of threatening conduct.

89. Plaintiff contends that these actions and omissions interfered with her ability to exercise rights protected by the ADA and contributed to her decision and medical inability to remain in the workplace.

**FOURTH CLAIM FOR RELIEF**
**Failure to Provide a Reasonable Accommodation**
**(Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5))**

90. Plaintiff incorporates paragraphs 1 through 89 as if fully set forth herein.

91. Beginning June 25, 2026, Plaintiff requested reasonable accommodations from Amazon, including transfer to a different work location, avoidance of high-conflict work environments, and intermittent leave, based on documented medical limitations arising from the conduct described above.

92. Amazon had notice of Plaintiff's medical limitations and requested accommodations, as reflected in its acknowledgment of Plaintiff's request and its subsequent communications concerning Plaintiff's related intermittent leave request.

93. Amazon did not provide an effective reasonable accommodation that would have permitted Plaintiff to return to work. Instead, Amazon approved only continued medical leave, closed Plaintiff's accommodation claim (No. A-2026-1630899) with a status of "Inadequate Documentation," and required Plaintiff to choose between extending unpaid or partially-paid leave or returning to work without any accommodation for her documented limitations, without resolving the underlying workplace conditions identified by Plaintiff's medical providers.

94. As a direct and proximate result of Amazon's failure to accommodate, Plaintiff suffered lost wages and benefits, emotional distress, and other damages.

## VI. JURY DEMAND

95. Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award the following relief:

(a). Compensatory damages for emotional distress, mental anguish, and other compensable injury caused by the alleged unlawful conduct;

(b). Punitive damages to the extent permitted by law;

(c). Appropriate equitable relief concerning any retaliatory employment records, including the productivity write-up, and correction of inaccurate employment records to the extent authorized by law;

(d). Appropriate equitable relief concerning Plaintiff's leave and workplace records to the extent authorized by law;

(e). Appropriate equitable relief directing correction of Plaintiff's accommodation and FMLA eligibility records, including resolution of the conflicting hours-worked determinations described above, to the extent authorized by law;

(f). Appropriate injunctive relief, if warranted, concerning workplace safety and separation from individuals whose conduct is found unlawful;

(g). Costs and any other relief recoverable under the ADA; and

(h). Such other and further relief as the Court deems just and proper.

09/04/2026
Dated: ~~August 31, 2026~~

/s/ ~~Penny Whitney~~ Penny Whitney
Penny Whitney
Plaintiff, Pro Se
Mabank, Texas
Phone: 214-535-8215

**UNITED STATES DISTRICT COURT**
for the
**Northern District of Texas**
**Dallas Division**

**Plaintiff(s):** Penny Whitney
3-26CV3107-E
-v-
**Defendant(s):** Amazon.com Services LLC
**Case No.:** ____________________ (to be filled in by the Clerk's Office)
☒ Jury Trial: Yes

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

**Name:** Penny Whitney
**Street Address:** 115 Creek Dr
**City and County:** Mabank, Henderson County
**State and Zip Code:** Texas, 75156
**Telephone Number:** 214-535-8215
**E-mail Address:** pen37w@yahoo.com

**B. The Defendant(s)**

**Defendant No. 1**

**Name:** Amazon.com Services LLC

**Job or Title (if known):** Employer

**Street Address:** 211 E. 7th Street, Suite 620

**City and County:** Austin, Travis County

**State and Zip Code:** Texas, 78701

**Telephone Number:** 800-927-9800

**E-mail Address (if known):** ______________________________________

**C. Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

**Name:** Amazon.com Services LLC — FTW5 Facility
**Street Address:** 1475 Akron Way
**City and County:** Forney, Kaufman County
**State and Zip Code:** Texas, 75126
**Telephone Number:** ____________________________________

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to (check all that apply):

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117 and 42 U.S.C. § 12203.

☐ Other federal law (specify): ____________________________________

☐ Relevant state law (specify, if known): ____________________________________

☐ Relevant city or county law (specify, if known):
____________________________________

## III. Statement of Claim

**A. The discriminatory conduct of which I complain in this action includes (check all that apply):**

☐ Failure to hire me.

☐ Termination of my employment.

☐ Failure to promote me.

☒ Failure to accommodate my disability.

☒ Unequal terms and conditions of my employment.

☒ Retaliation.

☒ Other acts (specify): Hostile work environment/disability-based harassment; coercion, intimidation, threats, and interference in violation of 42 U.S.C. § 12203(b).

**B. It is my best recollection that the alleged discriminatory acts occurred on date(s):**

Beginning in 2024 and continuing through the date of this filing, as more fully described in the attached Complaint (Attachment A), paragraphs 1 through 95.

**C. I believe that defendant(s) (check one):**

☒ is/are still committing these acts against me.

☐ is/are not still committing these acts against me.

*(Plaintiff remains on medical leave and contends that Defendant's failure to accommodate and retaliatory conduct, including unresolved leave and FMLA-eligibility determinations, remain ongoing.)*

**D. Defendant(s) discriminated against me based on my (check all that apply and explain):**

☐ race

☐ color

☐ gender/sex

☐ religion

☐ national origin

☐ age (year of birth) ____________

☒ disability or perceived disability (specify disability): diagnosed anxiety disorder; and visible neck scars for which Plaintiff was perceived or regarded as having an impairment.

**E. The facts of my case are as follows:**

Plaintiff incorporates by reference and attaches hereto her accompanying Complaint for Violations of the Americans with Disabilities Act (Attachment A), setting forth the factual allegations in numbered paragraphs 1 through 75 and the causes of action in numbered paragraphs 76 through 94, which is submitted concurrently with this form and made a part hereof.

## IV. Exhaustion of Federal Administrative Remedies

**A. Charge filed with EEOC:** Charge No. 450-2026-01807 (copy attached)

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on (date): June 15, 2026 (issuance date; copy attached).

*C. Only litigants alleging age discrimination must answer this question.*

Not applicable — Plaintiff is not alleging age discrimination.

## V. Relief

Plaintiff seeks compensatory damages for emotional distress, mental anguish, and other compensable injury; punitive damages to the extent permitted by law; equitable relief concerning retaliatory and inaccurate employment, leave, and accommodation records, including resolution of Defendant's conflicting FMLA hours-worked determinations; injunctive relief concerning workplace safety and separation from individuals whose conduct is found unlawful; costs; and such other relief as the Court deems just and proper, as more fully set forth in the attached Complaint (Attachment A).

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**Date of signing:** 09/04/2026

**Signature of Plaintiff:** /s/ ~~Penny Whitney~~ Penny Whitney

**Printed Name of Plaintiff:** Penny Whitney

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/15/2026

**To:** Mrs. Penny Whitney
115 Creek dr
MABANK, TX 75156
Charge No: 450-2026-01807

EEOC Representative and email: KATERINE MEJIA MERCEDES
INVESTIGATOR
KATERINE.MEJIA-MERCEDES@EEOC.GOV

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2026-01807.

On behalf of the Commission,

KATERINE MEJIA MERCEDES

Digitally signed by KATERINE MEJIA MERCEDES
Date: 2026.06.15 15:14:30 -05'00'

For: Travis Nicholson
District Director

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

**CHARGE PRESENTED TO:**
EEOC
Texas Workforce Commission Civil Rights Division

**AGENCY CHARGE NO.**
450-2026-01807

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Mrs. Penny Whitney

Phone No.: 214-535-8215

Year of Birth: 1968

Mailing Address: 115 Creek dr
MABANK, TX 75156

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Amazon

No. Employees, Members: 501+ Employees

Phone No.:

Mailing Address: 1475 Akron Way
FORNEY, TX 75126, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/01/2024

Latest: 06/12/2026

Continuing Action

THE PARTICULARS ARE:

PERSONAL HARM:

I.Since 2024, I have been harassed by my visible neck scars.

II.Ashley (LNU), Inbound Picker, would make comments such like "gross", "eww", "stinky", and "yuck". She was joined by other coworkers.

III.The treatment was so constant and serious that I had to take several medical leaves to get medical treatment.

IV.Each time I returned from leave, the harassment intensified by coworkers making these types of comments.

V.On several occasions I complained about the treatment, but no action was taken.

VI. Because of the severity of the treatment and the lack of action, I have been on leave since February 27, 2026.

RESPONDENT'S REASON FOR ADVERSE ACTION:

Not available.

DISCRIMINATION STATEMENT:

I believe that I was discriminated against based on my disability, and/or because I was regarded as disabled, in violation of the Americans with Disabilities Act of 1990.

I believe that I was retaliated against in violation of Section 503(a) of the Americans with Disabilities Act of 1990, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Mrs. Penny Whitney
06/15/2026

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

______________________________
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary______________________________

Printed Name ______________________________

**JS 44 (Rev. 04/21) (TXND 04/21)** **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| | |
|---|---|
| **I. (a) PLAINTIFFS**<br>Penny Whitney | **DEFENDANTS**<br>Amazon.com Services LLC |
| **(b) County of Residence of First Listed Plaintiff:** Henderson<br>(EXCEPT IN U.S. PLAINTIFF CASES) | **County of Residence of First Listed Defendant:** Out of State<br>(IN U.S. PLAINTIFF CASES ONLY) |
| **(c) Attorneys (Firm Name, Address, and Telephone Number)**<br>Penny Whitney (Pro Se)<br>115 Creek Dr, Mabank, TX 75156<br>Tel: (214) 535-8215 \| Email: pen37w@yahoo.com | **Attorneys (If Known)** |

RECEIVED
SEP 1 1 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only)
*[N/A - Federal Question Jurisdiction Applies]*

PTF: ☐ Citizen of This State DEF: ☐ Citizen of This State
PTF: ☐ Citizen of Another State DEF: ☐ Inc. or Principal Place of Business

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☒ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**LABOR / FORFEITURE / OTHER**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Ret. Inc. Security Act

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding ☐ 2 Removed ☐ 3 Remanded ☐ 4 Reinstated/Reopened ☐ 5 Transferred ☐ 6/8 MDL

**VI. CAUSE OF ACTION**
**Cite the U.S. Civil Statute under which you are filing:** 42 U.S.C. § 12112 & 42 U.S.C. § 12203
**Brief description of cause:** ADA disability discrimination, failure to accommodate, retaliation, and interference. Events occurred at FTW5 facility in Kaufman County, TX.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $:** Compensatory & Punitive Damages
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
DOCKET NUMBER: None

DATE: 09/04/2026

SIGNATURE OF ATTORNEY OF RECORD / PRO SE: [signature] (Pro Se)

POSTAL SERVICE ® MAIL

UNITED STATES POSTAL SERVICE. Retail

P

US POSTAGE PAID

$11.95

Origin: 75147
09/04/26
4855250147-01

PRIORITY MAIL®

1 Lb 3.10 Oz

RDC 03

EXPECTED DELIVERY DAY: 09/08/26

C001

SHIP TO:
STE 1452
1100 COMMERCE ST
DALLAS TX 75242-1310

USPS TRACKING® #

9505 5102 3888 6247 0576 98

USPS.COM/PICKUP

Expected d
Domestic s
USPS Trac
Limited int
When used

nsurance does
lail Manual at
See Internati

MAIL
OR DOM

To schedu
sc

l destinations.

Domestic

overage.

X-RAY

X-RAY

RECEIVED - 4
SEP 1 2026
MAILROOM

M

FROM:

UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Penny Whitney
115 Creek Dr Mabank, TX
75156

TO:
1100 Commerce Street
Room 1452
Dallas, TX 75242
Attn Clerk's office

Label 228, December 2023 FOR DOMESTIC AND INTERNATIONAL

TRACKED ■ INSURED

PS00000133100

EP14 July 2022
OD: 15 x 11.625

VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLIN